UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

AHMED SALIM,

                    Petitioner,

          -v-                                          15-CV-68-JTC

JEH JOHNSON, Secretary of DHS;
MICHAEL PHILIPS, District Director;
TODD TRYON, Asst. Field Office Director;
IMMIGRATION AND CUSTOMS ENFORCEMENT,

                    Respondents.

─────────────────────────────────

## INTRODUCTION

Petitioner Ahmed Salim, an alien under a final order of removal from the United

States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241 seeking release from detention in the custody of the United States Department of

Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending

the execution of a final immigration order of removal issued against him.  Item 1.  As

directed by the court's order entered February 2, 2015 (Item 2), respondent[1] has submitted

an answer and return (Item 4), along with an accompanying memorandum of law (Item 5),

in opposition to the petition, and petitioner has filed a reply (Item 6).  For the reasons that

follow, the petition is denied.

─────────────────────────

[1]  The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* section  2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native of Palestine and citizen of Jordan, was admitted to the United States at or near Chicago, Illinois on or about December 9, 2004, as a lawful permanent resident. *See* Item 4-1 (Payan Decl.), ¶ 5.  According to DHS records, petitioner was convicted in the Shelby County Court, Memphis, Tennessee, of Possession of a Controlled Substance (hydrocodone), in violation of section 39-17-418 of the Tennessee Statutes and Codes and was fined $750. *See* Payan Decl., ¶ 6; Item 4-2 ("Exh. A"), p. 10.

On November 14, 2013, petitioner applied for admission to the United States at the Peace Bridge Port of Entry, Buffalo, New York.  *See* Payan Decl., ¶ 7.  Removal proceedings were commenced by a Notice to Appear ("NTA") which charged petitioner with being inadmissible as an alien who has been convicted of a controlled substance offense, pursuant to § 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(2)(A)(i)(II).  Payan Decl., ¶ 7; Exh. A, pp. 12-14.[2]

On November 25, 2013, an Immigration Judge ("IJ") denied petitioner's request for a change in custody status.  Payan Decl., ¶ 8; Exh. A, pp. 8-9.  On December 17, 2013, petitioner filed in this court a petition for a writ of habeas corpus seeking release from detention and/or an individualized bond hearing.  This court denied the petition and dismissed the case in an order filed April 24, 2014. *See* Payan Decl., ¶ 10; Exh. A, pp. 23-28.  On February 14, 2014, an IJ denied petitioner's applications for relief and ordered his removal from the United States to Israel.  Payan Decl., ¶ 11; Exh. A, pp 6-7.  On June 11,

---

[2]  The NTA erroneously stated that petitioner's conviction in Tennessee was for possession of marijuana, and was corrected, in Additional Charges of Inadmissibility/Deportation, served December 5, 2013, to reflect that the conviction was for possession of hydrocodone.  Payan Decl., ¶ 9; Exh. A, pp. 10-11.

2014, the Board of Immigration Appeals ("BIA") dismissed petitioner's appeal from the IJ's decision.  Payan Decl., ¶ 12; Exh. A, p.5.

On July 2, 2014, DHS sent a presentation packet to the Consulate General of Israel (the "Consulate") in New York, New  York, requesting authorization to allow petitioner, a Palestinian national, to cross into the Palestinian territories through the Allenby Bridge. Payan Decl., ¶ 14; Exh. A, pp. 19-22.  On July 7, 2014, the Vice Consul of the Israeli Consulate notified DHS that petitioner was authorized to enter the Palestinian territories. Payan Decl., ¶ 14; Exh. A, p. 18. DHS records indicate that DHS has been in contact with the DHS Headquarters Travel Document Unit ("HQTDU") to arrange for petitioner's removal on a charter flight. Those arrangements have not yet been finalized.  Payan Decl., ¶ 15.

In September 2014, DHS conducted a review of petitioner's custody status, in accordance with immigration regulations.  Payan Decl., ¶ 16; Exh. A, pp. 3-4.  On or about September 10, 2014, DHS notified petitioner that, based upon the totality of information available in his file, he would be a threat to the community and a flight risk if he were to be released from custody.  *Id.*

In December 2014, DHS Headquarters Post Order Custody Review Unit ("HQPOCRU") conducted a further review of petitioner's custody status, including an in-person interview of petitioner on December 2, 2014, at the Buffalo Federal Detention Facility in Batavia, New York.  Following completion of the file review and interview, petitioner was notified, on December 11, 2014, that DHS determined to continue his detention in DHS custody.  Payan Decl., ¶¶ 17-18; Exh. A, p. 2.

Petitioner filed this petition on January 22, 2015, seeking habeas corpus relief

pursuant to 28 U.S.C. § 2241.  He argues that his lengthy detention is unconstitutional.[3] The respondent states that DHS is in possession of a travel document for petitioner and it is expected that he will be removed from the United States within the reasonably foreseeable future.  Payan Decl., ¶  19.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis,*  533 U.S. 678, 687 (2001) (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending removal following the entry of a final order of removal are governed by INA § 241 which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

---

[3]  To the extent that petitioner also seeks an order preventing DHS from transferring him from the Buffalo Federal Detention Facility, this aspect of the motion is denied for lack of jurisdiction.  *See Guangzu Zheng v. Decker,* 2014 WL 7190993, at *1516 (S.D.N.Y. Dec.12, 2014) (district court lacks jurisdiction to review Attorney General's discretionary administrative determination of appropriate place of aliens' detention pending removal); *Avramenkov v. I.N.S.*, 99 F.Supp.2d 210, 2013 (D.Conn.2000) (district court lacks jurisdiction to prevent INS from transferring detainee from one federal detention facility to another).  Additionally, to the extent that the current petition can be deemed to assert a challenge to the underlying order of removal, these claims are barred by the amendments to the INA set forth in the REAL ID Act of 2005, Pub. L. No. 109-13, 199 Stat. 231 (codified at 8 U.S.C.§ 1252), which divested the district courts of jurisdiction over aliens' challenges to immigration orders of removal other than challenges to detention.

> (i)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").  The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered removed due to conviction of a crime–beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …."  INA § 241(a)(6).[4]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States.  *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure

---

[4]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

removal, the court adopted a period of six months  "for the sake of uniform administration

in the federal courts …."  *Id.* at 701.

> After this 6-month period, once the alien provides good reason
> to believe that there is no significant likelihood of removal in
> the reasonably foreseeable future, the Government must
> respond with evidence sufficient to rebut that showing.  And for
> detention to remain reasonable, as the period of prior
> postremoval confinement grows, what counts as the
> "reasonably foreseeable future" conversely would have to
> shrink.  This 6-month presumption, of course, does not mean
> that every alien not removed must be released after six
> months.  To the contrary, an alien may be held in confinement
> until it has been determined that there is no significant
> likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has

promulgated regulations providing for review of the custody status of aliens who have been

detained for more than six months after the issuance of a final order of removal.  Under

these regulations, a detainee who has been in post-removal-order custody for more than

six months may submit a written request for release to DHS Headquarters Post-order

Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no

significant likelihood that the alien will be removed in the reasonably foreseeable future."

8 C.F.R. § 241.13(d)(1).  The written request must include "information sufficient to

establish his or her compliance with the obligation to effect his or her removal and to

cooperate in the process of obtaining necessary travel documents."   8 C.F.R.

§ 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts

of the case including, but not limited to," the following:

6

[T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

As set forth above, in this case petitioner was received into DHS custody on November 14, 2013 and charged with being an inadmissible arriving alien, based upon his conviction of a crime involving a controlled substance, and his detention pending completion of immigration removal proceedings was mandatory pursuant to INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A) ("if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding under [INA § 240]").  This detention continued until June 11, 2014, when the BIA dismissed petitioner's appeal from the Immigration Judge's order of removal.  *See* 8 C.F.R. § 1241.1(b) (order of removal becomes final upon dismissal of appeal by BIA).

After the order of removal became final, petitioner's detention was authorized by INA § 241(a), and the removal period commenced.  DHS promptly undertook efforts to secure authorization for petitioner to cross into the Palestinian territories through Israel.  *See* Payan Decl., ¶ 13.  On July 7, 2014, the Israeli Consulate authorized petitioner to enter the Palestinian territories at the "Alenbi" passage.  Payan Decl., ¶ 14.  DHS has a valid travel document for petitioner and is awaiting the completion of travel arrangements.  Payan

Decl., ¶¶ 15, 19.

Under the due process standards set forth in *Zadvydas*, petitioner must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing."  *Id.*; *see also Wang v. Ashcroft*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*.  The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Israel in the reasonably foreseeable future.  Travel documents were approved by the Israeli Consulate and permission has been granted for him to pass into the Palestinian territories at the "Allenbi" passage.  Additionally, there is no institutional barrier to petitioner's removal.

Petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*. However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas. See, e.g., Khaleque v. Dep't of Homeland Sec.*, 2009 WL 81318, at *4 (W.D.N.Y. Jan. 9, 2009) (petitioner failed to meet initial burden

where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F.Supp.2d 301, 306–07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar.13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct.8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Additionally, petitioner has been afforded all the due process to which he is entitled pursuant to the applicable regulations.  *See* 8 C.F.R. §241.4 (review of custody status at regular intervals).  Accordingly, petitioner has failed to demonstrate that he is "in custody

9

in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed.  This dismissal is without prejudice to file another petition should it subsequently appear that removal is no longer reasonably foreseeable.  *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama v. Dep't of Homeland Sec.,* 553 F. Supp. 2d 301, 307 (W.D.N.Y. 20008).

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: July 1, 2015